1           IN THE UNITED STATES DISTRICT COURT

2             EASTERN DISTRICT OF KENTUCKY

3                  COVINGTON

Eastern District of Kentucky
**FILED**

4                - - -

**MAY 1 1 2006**

5   CHRISTO LASSITER,       :

AT COVINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

6       Plaintiff,    :

7     Vs.         :   Civil No. 04-106

8   SHARLENE LASSITER,    :   Friday, 2:00 p.m.

9       Defendant.    :   April 14, 2006

10               - - -

11             IN CHAMBERS

12         PRETRIAL HEARING BEFORE

13       WILLIAM O. BERTELSMAN, JUDGE

14               - - -

15   APPEARANCES:

16       FOR THE PLAINTIFF:

17           Christian Jenkins, Esq.

18           Eric Larson, Esq.

19       FOR THE DEFENDANT:

20           Sharlene Lassiter, Esq.

21

22

23

24   COURT REPORTER:

25           LaCartha J. Pate.

2

P R O C E E D I N G S

FRIDAY, APRIL 14, 2006

2:00 P.M.

THE COURT:    Give your appearances for the court

reporter.

MS. LASSITER:    Sharlene Lassiter, S-H-A-R-L-E-N-E.

MR. JENKINS:    Christian Jenkins.

MR. LARSON:    Eric Larson.

MR. LASSITER:    Christo Lassiter, C-H-R-I-S-T-O

L-A-S-S-I-T-E-R.

THE COURT:    Okay, ladies and gentlemen, since our

last meeting I have read the rest of the book that's in

question and I have a pretty good feel for it.

We've got a number of issues.  This is a final pretrial

and we've got a trial coming up and the first thing I have

is the statement by the Plaintiff that he wants to waive a

jury.  The defendant and I in essence would have to agree

with that.

Do you want to waive a jury?

MS. LASSITER:    I have no objection.

THE COURT:    Well, I was afraid you were going to say

that, because I don't want to try it without a jury.  I can

call an advisory jury and just submit some issues to them,

but I think it would be better if 12 people decide who's

telling the truth in this matter than just one.

1          So I can either try it with a jury under the regular

2     rules or try it with an advisory jury.  I'd just as soon do

3     it with a regular jury because if I do it with an advisory

4     jury, then I have to make findings of facts and conclusions

5     of law.

6          If you waive it, I guess I'll have to use the advisory

7     jury.

8          MR. JENKINS:    Yeah, we're waiving it.  Defendant

9     waives it.  But, your Honor, we'll respect your ruling.  Our

10    rationale for waiving the jury is very simple.  There is

11    some evidentiary issues that are going to make a jury trial

12    somewhat cumbersome.  If we were trying with a jury, we'd

13    ask to have it bifurcated which would help avoid some of the

14    issues.

15         THE COURT:    Bifurcated in what way?

16         MR. JENKINS:    Liability and damages.

17         THE COURT:    I'll do the damages.

18         MR. JENKINS:    That way I think a lot of the --

19         THE COURT:    But I want to submit to the jury to see

20    who's telling the truth about this stuff.

21         MR. JENKINS:    I respect that --

22         THE COURT:    It makes sense.

23         MR. JENKINS:    -- and I think it would make it a very

24    easy to deal with the evidentiary issues.

25         THE COURT:    We just got one trial and I would just

1    submit those questions to a jury --

2         MR. JENKINS:    That would be fine.

3         THE COURT:    -- to an advisory jury; is that all right

4    with you?

5         MS. LASSITER:    Yes.

6         THE COURT:    And then the question of the injunction,

7    too.  I've kind of made a specialty out of these libel

8    issues.  I spent a lot of time on this, probably to the

9    detriment of the patent case I have at 2:30 that they're

10   arguing to me.  To me, this is a lot more interesting.

11        MR. JENKINS:    We have copies of your law review on

12   this, your Honor.

13        THE COURT:    There's been a lot of laws since then.

14   It's interesting, I ran it down since then.  It's not as

15   simple as what you say.  I just got this down on the list.

16        We will try it with an advisory jury and I will submit

17   to them the questions that I'm not comfortable with, but I

18   have no problem that the issues on liability, setting

19   damages or a ruling will be in conjunction, at least the

20   matter of law, anyway.  It's not just as simple as that one

21   case.

22        Okay.  We've got some motions in limine, and basically

23   I think they're trying to keep out evidence of the

24   Defendant's contention that the Plaintiff doesn't have a

25   good reputation to start with, which I believe is proper

1    evidence.  That's not to say each and every witness and each

2    and every question would be proper, and I'm going to control

3    the time limits.

4        MS. LASSITER:    Yes.

5        THE COURT:    I'm sure you could call a bunch of people

6    who could, each and every one, discuss every page of the

7    book, which as I recall runs 300 and something pages, and we

8    could be there for a month, and we're not going to do that.

9    We want to get it finished.

10       So, do you have any particular witness you object to?

11       MR. JENKINS:    We object to all the witnesses who have

12   nothing to do with the questions that you would submit then

13   to the jury, which is the truth or the falsity of the

14   allegations.  I understand the allegation that he doesn't

15   have a good reputation to start with may only be developed

16   as to the damages, your Honor.

17       THE COURT:    Yes, that's true.

18       MR. JENKINS:    So we would state that with respect to

19   the jury questions -- and that's why we suggest a bifurcated

20   jury, if it's a jury trail.  That is confusing to the jury.

21   In fact, Sack has a comment on this exact issue, that it is

22   only relevant to -- there's a section in Sack on defamation

23   entitled Charges Already in Circulation.  The position in

24   Sack is that if it's admissible at all, there is the weight

25   of authority, according to Sack, it says that kind of

1   evidence is not admissible.  But if it is, it's admissible

2   in mitigation of the damages because the Plaintiff -- I'm

3   sorry, the Defendant is then saying, okay, if this is

4   defamatory, then the harm done by that is lessened by the

5   fact that the bar was already raised with respect to this

6   individual's reputation.  Who is to say that all of that

7   evidence has nothing to do with the truth of the statements

8   we allege as defamatory?

9         MS. LASSITER:   I object to that simply because of the

10  nature of the allegations that have been raised.   The

11  Plaintiff is relating -- in his complaint stated three

12  particular issues:  The issue of adultery, the issue of

13  abuse and the issue of stalking.  All of those --

14        THE COURT:   I don't recall anything about stalking,

15  let's put it that way.

16        MR. JENKINS:   We have an alleged -- relating to

17  defamation, we have an alleged stalking.  It's not in --

18        MS. LASSITER:   Well, there's specific language with

19  regard to the stalking in the complaint.

20        THE COURT:   Well, they can look that up and they can

21  withdraw it if they want to.

22        MS. LASSITER:   Yes, but they haven't amended the

23  complaint at this point so that's why part of me --

24        THE COURT:   It hasn't been mentioned to date.

25        MR. JENKINS:   If I'm mistaken, your Honor, I

1    apologize.

2         THE COURT:    I don't recall anything in the book about

3    stalking, but I could be --

4         MS. LASSITER:    Well, one of the questions related to

5    a sentence that I put in there about, "engaging in stalking

6    behavior."  Again that is part of the abuse and also was the

7    ground for the temporary restraining order, which is part of

8    the public record.  So the abuse and the stalking are

9    together, which supported the temporary restraining order,

10   which shows the habit and routine behavior, which is

11   necessary to show the abuse and these other behaviors that

12   support the statements that were in the book.

13        MR. JENKINS:    Your Honor, I'm looking at the

14   complaint.  That I can see, we did not use the word

15   stalking.  We alleged defamation of an allegation of

16   physical assault; defamation from allegations that he

17   dragged her down two and a half flight of stairs; defamation

18   that he tried to strangle her as she held her son.

19        What the Defendant is attempting to do is to bring an

20   issue in that she did raise in the divorce proceedings, or

21   to bolster her credibility that we haven't alleged as one of

22   the bases for the defamation.  I have the restraining order

23   that she's talking, from the magistrate, where the

24   magistrate actually found, as a matter of fact, and made a

25   legal finding there's no evidence whatsoever to support that

1    stalking occurred, with the exception of one isolated

2    incident.  His ruling was very clear that he did grant the

3    restraining order and it was Mrs. Lassiter that requested

4    it.  He granted sua sponte, awarded it mutually because --

5    not because he found that there was an actual stalking

6    pattern, but because he found that Mrs. Lassiter, and here's

7    his words -- there is no evidence on the record that the

8    husband, except for the noted one incident, exhibited what

9    could fairly be characterized as aggressive or abusive

10    behavior toward wife or subjected her to threats, unwanted

11    or aggressive touching of a person.  He goes on to say,

12    however, it appears that -- where does he say this?  It

13    seems clear that wife's concern for her safety, misplaced or

14    not, is nonetheless sincere.  Then the judge proceeded to

15    sua sponte award them simultaneous mutual restraining

16    orders.

17        Now we don't think this has anything to do with this

18    case, but if it does, I think it's going to open the door to

19    relitigate everything in the divorce proceeding.

20        THE COURT:    That's the problem --

21        MS. LASSITER:    I disagree with that, your Honor,

22    because I think the point here with the defamation is about

23    what information is in the record and known to me as of 2003

24    when I published the book.  To focus narrowly on, to just on

25    that particular, that's part of the overall picture but

1    that's not all of the picture.

2         THE COURT:    You still continue to publish the book?

3         MS. LASSITER:    Yes.

4         THE COURT:    And you're saying if somebody wants a

5    copy, you sell it to them or give it to them?

6         MS. LASSITER:    And I think that for purposes of --

7    it's important to recognize in particular with the other

8    allegations that it is not just information available to me

9    as of '96, '97 that constituted the issues of abuse,

10   adultery, and other sorts of like behaviors, because that

11   would be barred by time.  And the fact that I made those

12   grounds, and as part of the answer and those were not just

13   litigated there but those came up at other points in time, I

14   think would be a focus of relitigating the divorce.  But

15   that's not the issue here.  The issue here is that the

16   moment that I published the book in 2003, what information

17   is out there, what information, what habit, what routine,

18   what reputation, of this particular Plaintiff was out there

19   at that time so that the statements that I made in 2003 in

20   that book are supported by factual information on a variety

21   of fronts.

22        And, you know, adultery is proven by circumstantial

23   evidence, not one particular event.  You have abuse in a

24   criminal sense, which is what they're trying to focus on,

25   but the abuse I'm talking about in this book is not a

1   criminal sense.  The criminal sense of abuse is focused on

2   physical.  But domestic abuse is more than just a physical

3   event and so --

4        THE COURT:   That's been one of my problems with

5   trying to analyze it, because there's so much more in the

6   book.  You only have two incidents, I believe I'm correct,

7   of --

8        MS. LASSITER:   -- of physical abuse, but --

9        THE COURT:   -- physical abuse, but the whole book is

10  full of a lot of other stuff.  You haven't asked -- whether

11  it's because a lot of it might be opinion or a lot of it

12  might be included by court records, I don't know, but they

13  haven't asked for damages or injunction on the other part.

14       The case, like I said, there's a lot of issues of --

15  free speech issues, Constitutional issues, and a good part

16  of this, however, the jury is entitled to some background.

17  You can't just come in and say, look at this one thing.  Who

18  would you call and what would they say?  Again, we haven't

19  got time to call the people you've got listed.  It's --

20  rather than me trying to sort it out, what's relevant and

21  what isn't, I'll set a time limit and let the people sort it

22  out themselves.

23       And it's not going to be productive to take two or four

24  weeks to try this, which I'm sure we could do.

25       MS. LASSITER:   Nor do I intend to.

1      THE COURT:    Well, you're a lawyer as well as a

2  professor.  No offense, I'm a lawyer, too.  I've got a

3  different perspective on things with this.

4      MS. LASSITER:    My goal is to move on with this.

5      THE COURT:    What are you looking for?

6      MS. LASSITER:    My witness list.

7      THE COURT:    So there's got to be some background

8  given to the jury, is what I'm trying to say, but I don't

9  know that you need 20 witnesses to do it.

10     MR. JENKINS:    And that background has got to be

11  mutual.

12     THE COURT:    Sure, he's got a right to put his side of

13  it, too.

14     MR. JENKINS:    Yes, and we can get into the evidence

15  where Ms. Lassiter was adjudged to have caused the unlawful

16  address afforded Mr. Lassiter, damages by Judge Dlott.

17     THE COURT:    She opens the door to it, then walk

18  through the door.

19     MR. JENKINS:    She's saying that now.

20     MS. LASSITER:    I'm not talking about the case that

21  you're talking about.  That's custody issues.  I'm talking

22  about the three things that you're talking about, the abuse,

23  the adultery and the stalking issues, which all constitute

24  part of the abuse.

25         I'm not talking about custody issues, which is the case

1    that you're talking about.

2         THE COURT:    You want to bring, as I understand what

3    you're saying, you want to bring in what used to be called

4    mental cruelty?

5         MS. LASSITER:    Yes, exactly.

6         THE COURT:    And he can -- but if you bring in mental

7    cruelty, then he can bring in what he considers to be your

8    mental cruelty, as it were.

9         MS. LASSITER:    Yes.

10        THE COURT:    And I'm sure you could go on for weeks on

11   that subject, but we're not going to do that.  Whatever you

12   do on that deal takes away from the rest of it because I was

13   going to give you five hours for the whole case.  On the

14   truth and falsity part, I'm only going to give you two, or

15   half of that, two and a half hours.

16        MS. LASSITER:    Well, even if I was estimating 10

17   minutes for most of these, and I haven't listed all of the

18   witnesses I have potentially --

19        THE COURT:    You don't have to call all of them.

20        MS. LASSITER:     -- I'm not planning on calling all of

21   them, right.

22        THE COURT:    Do you know yet who out of the -- that's

23   not unusual, the people, more or less who you're going to

24   call?  Do you know which ones you are going to call?

25        MS. LASSITER:    Yes, I do.

13

1    THE COURT:    You got about three weeks.  Well, then

2  tell me.

3    MS. LASSITER:    Obviously Dr. Lilly, Zaki Ali, Joseph

4  Tomain, primarily Donald Kazee, Joanne Ackerman, Paul Caron,

5  Sylvius and Claire Von Saucken, Erinn Gordon, Victor Dwayne

6  Sims, Cheryl Grant.

7    THE COURT:    You have not got time for all these

8  people.

9    MS. LASSITER:    Their testimony is very short.  One

10  thing that may drag it out is cross-examination, it won't

11  be --

12    THE COURT:    Then their time will come out of their

13  time.

14    MS. LASSITER:    Exactly.

15    THE COURT:    It's not going to be -- I'm only going to

16  give you three hours apiece for this part of the case.

17    MS. LASSITER:    Right, and the direct examination --

18    THE COURT:    This is all kind of going to credibility.

19    MS. LASSITER:    Well, some of it's reputation, some of

20  them have direct testimony as to specific facts.

21    THE COURT:    Some may have to come back twice if we're

22  going to bifurcate it like this.

23    MS. LASSITER:    Okay.

24    MR. JENKINS:    I think that would help.  We've asked

25  Mrs. Lassiter in deposition about each one of these

1    witnesses, the length and what they would have to offer.

2    And our motion catalogues some of these folks clearly have

3    no information whatsoever to add to truth.  Professor Lilly,

4    in his own deposition -- took his deposition, Dr. Lilly --

5    his testimony is it's been so many years ago, I don't

6    remember the exact words.  I can't remember where or how I

7    heard the rumor, but there was a brief discussion once when

8    I told her I had heard he was having an affair.  That's not

9    truth or falsity.

10        THE COURT:   But it's negligence.

11        MR. JENKINS:    Certainly it is, but it's not truth or

12   falsity of the allegation.

13        THE COURT:   Let the jury decide whether it was

14   negligent for her to say that, too.

15        MR. JENKINS:    I understand, but the negligence isn't

16   the standard.

17        MS. LASSITER:    Yes, it is.

18        MR. JENKINS:    Professor Lassiter has submitted jury

19   instruction where she concedes that since the allegations

20   she has made were made defamatory per se, she bears the

21   burden to prove truth.  She bears the burden to prove truth

22   in this matter.  This is per se defamation, your Honor.

23        THE COURT:    Yeah, but you still have to do negligence

24   if the Court has said that -- in Kentucky has said that it

25   follows (Gertz and would require -- it isn't strict

1    liability, it's negligence.  So she's got a right to show

2    why she said that.

3        MR. JENKINS:    In a per se defamation case, your

4    Honor, where the Defendant is not a -- the Defendant is not

5    a media Defendant or the Plaintiff is not a public figure,

6    negligence I don't believe is the standard.

7        THE COURT:    Okay, I thought I read it.  What is it?

8    Anybody remember that case?

9        MS. LASSITER:    Gertz.

10        THE COURT:    Gertz is a Supreme Court case, but

11    there's a Kentucky case.

12        MR. JENKINS:    Stringer.

13        THE COURT:    Whatever case it is, as I read it, it

14    said in all libel cases, there are going to get negligence.

15    If I'm wrong, you show me I'm wrong and I'll change my mind.

16    Right now whoever's got the burden of proof -- I haven't

17    thought about it, but whoever has got the burden of proof

18    should show that she wasn't negligent and you got to show

19    that she was, and I will overrule and then I will go back

20    and reread that case.

21        MR. JENKINS:    Maybe we can shortcut this thing then.

22        THE COURT:    Yeah, but the fact that she did it, not

23    necessarily with a subjective belief that it was true but

24    there has to be negligence.  I forget the facts, I've read

25    so many libel cases in the last two weeks that I may have to

1    take my article.  I've read so many libel cases in the last

2    two weeks that I forget the facts of some of them.  I do

3    remember or recall one of them.

4        MR. JENKINS:    If that is the case, then I won't argue

5    with the Court at this point.  But if that is the case and

6    the question before the jury is truth or falsity, and

7    they're allowed to hear testimony about rumors, is that

8    appropriate testimony under Rule 403, your Honor?  People

9    who can't recall who they heard it from or where they heard

10   it are going to testify about a rumor that they heard; is

11   that appropriate?

12       THE COURT:    Hang on a minute, I think I got it right

13   here.  See if you can find it, Gertz.

14       MR. JENKINS:    I'm not going to argue with the Court

15   at this juncture.

16       THE COURT:    So it didn't go to negligence, what

17   rumors she heard and what the circumstantial evidence that

18   she's talking about.

19       MR. JENKINS:    But my question remains whether that's

20   appropriate evidence.

21       THE COURT:    That also depends on the truth.

22       MR. JENKINS:    Well, no, it doesn't bear on the truth,

23   your Honor.

24       THE COURT:    Sure it does.  The jury can conclude from

25   this evidence, the circumstantial evidence she mentioned

17

1   last time it's true.

2        MR. JENKINS:   A rumor from someone who you're not

3   sure where you heard it or who you heard from, but you don't

4   even recall who you heard the rumor from.

5        THE COURT:    She does know where she heard it.

6        MR. JENKINS:    This is the witness she's saying that

7   she's going to call.  This is Dr. Lilly's testimony, "I

8   don't know where I heard it.  I don't know where I heard it

9   from."  In other words, my client is put in the untenable

10  position of having a witness to be allowed to testify about

11  something he heard who has no idea where it came from, no

12  idea what was said exactly, but he's allowed to come in and

13  say, I heard it.

14       That is hearsay.  That is uncorroborated hearsay, and

15  that's the worst kind of evidence.  That turns a case like

16  this -- we don't live in the 17th Century where rumor is

17  proof of fact.  It is not proof of fact, not unless you can

18  tell me who you heard it from and I can take their

19  deposition and I can challenge that.

20       I took Dr. Lilly's deposition --

21       THE COURT:   The issue is -- well, there is an issue

22  of whether it was true and -- but there's also an issue of

23  did she believe it was true, and if it isn't true and

24  believing it was true, was she negligent?

25       MR. JENKINS:   I agree, and I submit to you that

18

1   whether she believed is relevant to damages but if she acted

2   knowingly and intentionally --

3           THE COURT:     Negligence is also relevant to liability.

4           MR. JENKINS:     I don't believe it is, your Honor.

5   Truth or falsity is the issue.

6           THE COURT:     Well, that was common law, it changed the

7   common law.  I can go back -- I was sure of that, but

8   sometimes I'm surprised at things I'm sure of -- I'm sure

9   I'll be suprised to be wrong, but anyway, I'll go back and

10  look at it again.  But that's my impression right now.

11          And now the testimony of this gentleman, the fact that

12  he told her, though, that's pertinent.

13          MR. JENKINS:     That's pertinent.  She can have him

14  testify to it.

15          THE COURT:     Well, they might say she's lying unless

16  he confirms it.

17          MR. JENKINS:     Unless he confirmed it?

18          THE COURT:     What he told her.

19          MR. JENKINS:     Oh, no, he does say he told her.

20          THE COURT:     Why don't you want him to testify to it?

21          MR. JENKINS:     Not about the truth of the allegation,

22  not about the truth --

23          THE COURT:     He testified that he told her.  If you

24  want it limited to certain issues, you ask for a limitation.

25          MR. JENKINS:     That should go to the issue of damages.

1    Her subjective belief whether she believed it or not, I

2    believe it's relevant to damages.

3         THE COURT:    It's relevant to damages, too, but it's

4    more than damages, it's liability also.

5         MR. JENKINS:    How is an uncorroborated, unidentified

6    rumor relevant to the truth of the allegation that is the

7    subject of the rumor?

8         MS. LASSITER:    Because that is relevance.

9         THE COURT:    It's relevant to her malice and lack

10   thereof of publishing.

11        MR. JENKINS:    It's only relevant to damages, would be

12   our position.

13        THE COURT:    And it's relevant to whether it was

14   negligent.  The law clerk is looking for the case.  I'll

15   give you a chance to brief it.  Besides I don't recall the

16   case made the distinction between public and private and it

17   might even concern private.

18        Gertz said we hold sanction, but as long as they do not

19   impose liability without fault.  The states may define for

20   themselves appropriate standard for liability for publisher,

21   broadcaster what's defamatory, false and injurious to a

22   private individual.  In response, we held -- and this is the

23   Supreme Court of Kentucky.  In response, we held in McCall

24   versus Courier Journal of the Legal Times that simple

25   negligence was the standard of liability necessary to

20

1    adequately protect the private individual from defamation.

2    However, to recover punitive damages, the law requires that

3    with a private individual to show actual malice.  Punitive

4    damages may be recovered only if the Plaintiff shall allege

5    in brief publication with actual malice.

6         So I would propose to submit to the advisory jury, were

7    these things false.  If they were false, were they done by

8    negligence.  Or if they were done by negligence, were they

9    also done with actual malice.  If you were asking for

10   punitive damages, I would submit to -- propose to submit

11   those things to the advisory jury.  This case I'm reading

12   from is Walter versus Lexington Herald Leader, 789 S.W. 2d

13   758, at 763, and it specifically says, private individual.

14   So she would have, within limits, but on why she believed

15   that her husband --

16        Beyond that there's some reference in the book at one

17   time she met the woman, came up to her at a shopping center

18   or something.  I forget how she knew the woman.  That would

19   probably go to the truth.

20        So those kind of things would be admissible.  I'm

21   telling you right now, you're not going to get all those

22   people on in the time I'm going to give you.  Remember you

23   got to save time for cross-examination.

24        MS. LASSITER:    Yes.

25        THE COURT:    So I'd pick my two or three best if I

1     were you, but you do what you want, but you will held to

2     that time, three hours apiece.

3          MR. JENKINS:    Can we ask that Mrs. Lassiter identify

4     those for us that she intends to call?

5          THE COURT:    She mentioned.  You can think about it

6     over the weekend and give them a letter with a copy which

7     ones you're actually going to call.  And you're never going

8     to get a witness on and off there in less than 15 minutes

9     apiece.  That's the way it goes.  Especially if most of them

10    you're calling are lawyers.

11         MR. JENKINS:    And if we're able, may we have the

12    opportunity to depose those individuals before the trial?

13         THE COURT:    She's had them listed for a long time.

14         MR. JENKINS:    And we asked her what they would say

15    and I believe our motion is clear, some of them address the

16    issue that you allowed at this point, your Honor, some of

17    them she's represented to us absolutely nothing about this.

18    We don't know which ones she's going to call.

19         MS. LASSITER:    Again, and the stalking reference is

20    in paragraph 23 of your complaint, which is why I put

21    witnesses on relating to the stalking issue as well.

22         THE COURT:    I don't recall you saying in the book

23    about stalking, but it was a long book.

24         MS. LASSITER:    Well, I listed a series of behaviors,

25    and what they alleged in their paragraph 23 of their

1    complaint specifically --

2        THE COURT:    You want to withdraw paragraph 23 about

3    the stalking?  I'm trying to --

4        MS. LASSITER:    This the only reason why --

5        MR. JENKINS:    That's part of the false light

6    allegation, your Honor, I believe, that might support false

7    light, not defamation.

8        MS. LASSITER:    It says that they are defamatory.

9        THE COURT:    Stalking is a crime.

10       MR. JENKINS:    It attributes to Professor Lassiter's

11   husband a characteristic which is not true.

12       THE COURT:    Well, you can think it over, if you want

13   to withdraw it.  Are you going to stick with it?  How can

14   somebody testify that -- I guess somebody could testify he

15   was stalking if they saw him doing it.

16       MS. LASSITER:    Yes, yes.

17       THE COURT:    Okay.

18       MR. JENKINS:    Do you recall that the judge ruled that

19   there was no evidence of stalking?

20       MS. LASSITER:    That was in '97 and that offense

21   occurred after '97.

22       THE COURT:    If it's the same parties and same issue,

23   it could be collateral estoppel.  This case, there's a

24   couple million dollars worth of issues.  No shortage of

25   issues.  I've been working on it for a solid two weeks,

1    because I'm interested in it.

2         MR. JENKINS:    There's all these people --

3         THE COURT:    Fortunately, I can't send you a bill.

4         MS. LASSITER:    I'm grateful for that.

5         MR. JENKINS:    There's all these people, who according

6    to Professor Lassiter herself really have no knowledge

7    whatsoever.

8         THE COURT:    I imagine she won't call them and waste

9    your time.  She's going to send you a letter, no later than

10   Monday, fax him a letter who you're going to call and what

11   they're going to say.  Some of the allegations have been

12   withdrawn so you need to revisit that.  We got the jury

13   trial and the court trial so you can pick the jury and then

14   you tell them who you're going to call and what they're

15   going to say.  They're going to be held to that.

16        MS. LASSITER:    Yes, yes.

17        THE COURT:    You do the same, by Wednesday you give

18   her a letter back who you're going to call and what they're

19   going to say.  And you're going to be held to that.

20        MS. LASSITER:    Yes.

21        MR. JENKINS:    Understood.

22        THE COURT:    And that's going to be it.  And you can't

23   get a witness on and off in five minutes to talk about this

24   kind of thing, but three hours apiece is what I'm going to

25   give you.  Then I'll take further proof on damages.  Maybe

1    you can do it by deposition.  If you don't want to spare the

2    inconvenience of coming back, use the depositions.

3         MS. LASSITER:    One of the witnesses, for convenience

4    of time, could testify to both issues?

5         THE COURT:    They don't want the jury to hear.  Since

6    you waive the jury, that's improper classification.

7    Anything else on the motions in limine?

8         MR. JENKINS:    I would like the opportunity of no more

9    than three pages to address for your Honor the issue we just

10   discussed.

11        THE COURT:    Sure.

12        MR. JENKINS:    Because I'm not prepared --

13        THE COURT:    Take four or five pages.

14        MR. JENKINS:    A judge recently told me, don't go past

15   five pages, I don't read it.

16        THE COURT:    Well, I'm on senior status, I have more

17   time.

18        MR. JENKINS:    I don't want to debate cases with your

19   Honor today and I'm not prepared to do that.

20        THE COURT:    It's been my understanding for years that

21   that's the law in Kentucky, that they adopted at least the

22   negligence.

23        MR. JENKINS:    I'm sorry, I just can't proceed --

24        THE COURT:    The common -- Gertz said, and I went back

25   and reread that, too, because Gertz said that the common

1   law, strict liability, liability without any fault was out

2   for everybody, as I understand it.  You show me if I'm

3   wrong, that's fine.

4        MR. JENKINS:    Thank you.

5        THE COURT:    It might be different than the law of

6   Ohio.  You might be thinking of the law of Ohio.  It might

7   be different than the law of Ohio.

8        Because they left it up to each state.  Gertz said, it

9   can't be strict liability.  We hold that so long as they do

10  not impose liability without fault, the states may define

11  for themselves.  That Gertz stands liability for publisher,

12  broadcaster, defamatory, falsehood or private --

13       MR. JENKINS:    And I think maybe that is what we're

14  saying is we would like one phase of the trial to focus on

15  simply the truth or falsity of the statements we allege were

16  defamatory.  The second phase --

17       THE COURT:    Well, it might be bifurcating it too

18  much.

19       MR. JENKINS:    The second phase will be just the

20  position of why there would be, if at all.  I believe her

21  mental state -- the case you cited before, your Honor, her

22  mental state in making the publication is relevant to

23  punitive damages, is relevant to special damages, is

24  relevant to what is assessed, not whether the statements she

25  published are true.

1        She published a statement that said this man pulled her

2    down a flight of stairs.  How does the fact that someone

3    heard a rumor, and can't tell us who he heard it from or

4    where he heard it, that he was having an affair, what does

5    that have to do with that allegation, except that --

6        THE COURT:    It's got to do with the other allegation.

7        MR. JENKINS:    -- except that it will mislead the jury

8    to, that he's a bad guy and draw the conclusion --

9        THE COURT:    Well, you can't just split the thing up.

10   You can bifurcate it to a certain extent, but the jury is

11   entitled some background.  They have to have some way to

12   assess the credibility of these individuals.

13       MR. JENKINS:    I'm going to anticipate a lot of 403

14   objections during the trial on these individual witnesses.

15   I understand that --

16       THE COURT:    I'll consider them as they come up.

17       MR. JENKINS:    Okay.

18       THE COURT:    But they have to have some background as

19   to the nature of the dispute so they can assess the

20   credibility of the individual.  It's going to go to their

21   bias then.  So she says all this happened and you get on

22   cross-examination and say, weren't you having a big domestic

23   dispute with him?  Haven't you folks been fighting for

24   years?  Aren't you still fighting?  And try to bring out the

25   hostile, and she'll do the same.

1      I mean, there's no way to keep it out.  You can give

2  instructions to the jury on how it can be limited, but they

3  have the right, if they've got to assess the credibility of

4  the individuals, which is the main thing that they're going

5  to have to do, they have to hear evidence of bias and the

6  history of bad blood between these individuals.

7      You can't sterilize the thing completely.

8      MR. JENKINS:    I don't suggest that.

9      THE COURT:    I'll hear you on it further if you want.

10      Okay.  Mrs. Lassiter, have you given any thought on

11  your method of testifying?

12      MS. LASSITER:    Yes.  I have requested a friend to ask

13  the questions, and he's checking his schedule right now to

14  make sure he can do that.

15      THE COURT:    He's going to read them?

16      MS. LASSITER:    Yes, he's going to read them to me.

17      THE COURT:    A list that they would have seen in

18  advance?

19      MS. LASSITER:    Yes, yes.  The only question I have is

20  how far in advance of the actual trial do you want the

21  questions submitted?

22      THE COURT:    I think you ought to give it to them by

23  the end of next week.

24      MS. LASSITER:    The questions?

25      THE COURT:    Yes.

1          MS. LASSITER:     For me?

2          THE COURT:     Yes.

3          MS. LASSITER:     Okay.

4          THE COURT:     On your direct.  Of course on cross -- on

5     redirect, I guess you could ask yourself, I don't know.

6     Unless this person, this individual, this attorney is going

7     to represent you, then we're going to have this problem of

8     how we're going to deal with objections when you're trying

9     to answer the question and objecting at the same time.

10    We'll have to deal with it.

11         Maybe I'll have you hold up a red flag or something

12    when there's an objection to the question.

13         I never tried one like this.  I can tell you some

14    stories about people who have been in here, representing

15    themselves, but none of them have been a law professor or a

16    lawyer, either.

17         Okay, at one point you raised the defense about an

18    opinion, and I did some extensive research on that and found

19    that state law still applies to what's opinion.  And in

20    litigation involving nonpublic figure in a matter that's not

21    a public interest, and the state law here is under the

22    restatement, still under the Ansy decision.  And that is,

23    does the publication apply if you've got private facts,

24    unknown facts you're not disclosing.  The basis of your

25    opinion, I have read the whole book, I would say that's the

1   case for those allegations.  You say some of your basis for

2   it, but it implies a certainty that would imply other proof

3   of it or other things, and that would go beyond opinion, of

4   the allegations.

5       MS. LASSITER:   It was mentioned last time, that's not

6   what they're -- they didn't --

7       THE COURT:   You're the one that raised the defense of

8   this opinion.

9       MS. LASSITER:   Right.

10      THE COURT:   I think it goes beyond opinion, it

11  implies the knowledge of other facts.  That's the Kentucky

12  case, restatement test.

13      The burden of proof, you still having some problems

14  with that, but in Kentucky I think the burden of proof would

15  be it's libelous per se, the court would hold that.  The

16  adultery, the physical violence is libelous per se, but you

17  would still have to prove -- or somebody's got to prove --

18  that she was negligent or not negligent, the Defendant's got

19  to prove that they're true.  So if she would meet that

20  burden, then there would be a question of whether she was

21  negligent in publishing.

22      Since everybody is going to testify to everything, I

23  think it's going to be somewhat academic.

24      MR. JENKINS:   Logistically then, your Honor, does

25  that mean that the Defendant proceeds first with the burden

1    of proof?  I have never done that before, either, your

2    Honor.

3         THE COURT:    I've seen a case or two where the

4    Defendant has the burden of proof and has to proceed first.

5         MR. JENKINS:    Because if she succeeds --

6         THE COURT:    That's usually considered to be a

7    privilege.

8         MR. JENKINS:    If she proceeds first --

9         THE COURT:    It looks like it's going to be a swearing

10   match.

11        MR. JENKINS:    I suspected, your Honor, if somebody

12   said -- she proves truth, the rest is academic and there's

13   no need to go forward.  Any of the issues whatsoever because

14   it's an absolute defense.  There's no dispute about that.  I

15   think it's something we can all agree on.

16        THE COURT:    Well, the evidence that she said she's

17   got so far is mostly the testimony, would probably be --

18   test giving it to the jury and see what she has to say about

19   it, and your witnesses have to say about it.  And remember

20   it's not a criminal case, so failure to testify can be

21   considered against the party.

22        So I would think it's best for the Plaintiff to go

23   first, but that's the order of proof rather than the burden.

24   Since he's -- it would be best to discuss what he objects

25   to, I think he ought to go first.  That's not an ironclad

31

1    rule of the burden of proof of which party has to go first.

2         That's about all I've got.  Anybody got anything else?

3         MR. JENKINS:    Make a little checklist.  There are no

4    stipulations, your Honor asked us.

5         THE COURT:    Can stipulate the book was published.

6    You can still arrive at it, you can save yourselves some

7    time.

8         MR. JENKINS:    We invited Mrs. Lassiter, and tried to

9    do that before.  We'd be glad to try.  The basic facts are

10   not in dispute.  She wrote it.  It refers to him.  She

11   published it.  He disputes it.  Then question then is, was

12   it false?  Did it injure?  Is there much more to it?

13        THE COURT:    We can go over some ground rules here.

14        Voir dire, I understand Ohio, in some cases they take

15   two or three days getting a jury, but we don't do that here.

16   I do most of the voir dire and give each about 10 minutes.

17   We'll have a jury within a hour.  I don't count the time for

18   voir dire against either party.  Time starts running with

19   opening statements.  What you use on direct and what you use

20   on cross will be counted against you.

21        So the Defendant, in doing the cross, or the

22   Plaintiff's side of the case, has got to save time for his

23   own direct.  And the Plaintiff in the cross-examining has

24   got to save time on putting on evidence, to allow some time

25   to cross-examine the Defendant's witnesses.

1       And final argument, I won't count against you, but I'll

2   give you such time as I think you need, which won't be near

3   as much as you would like to have.  But it will be a lot

4   more focused.

5       This is a very unusual case and things may come up that

6   we're not anticipating.  I think if we give it a good shot,

7   we can get the thing tried.  Again, some resolution that the

8   Court recommends between the two of you to maybe amend the

9   book in some way.  How many copies of this do you sell now

10  or publish or distribute, give them away, or whatever you

11  do?

12      MS. LASSITER:    So far, maybe 15 a year.

13      THE COURT:    So we're not talking about --

14      MR. JENKINS:    It's not the New York Times, your

15  Honor.

16      THE COURT:    If you all could agree, save yourself the

17  burden of going through this, this thing has the potential

18  to backfire against anybody involved in it.

19      MR. JENKINS:    We've spoken at length with Mr.

20  Lassiter and we are glad to have a discussion with the

21  assistance of the Court or without, any way that can be

22  accomplished.

23      THE COURT:    I will have the magistrate do it, if you

24  want, but the third party has to be open to it.

25      MR. JENKINS:    We will be glad to participate.

33

1    THE COURT:    Are you open in return for you dropping

2    the damages, agree to edit the book to some extent, take

3    some of this stuff out?

4    MS. LASSITER:    I think I'm willing to listen to

5    whatever is on their mind.  At this point I'm not entirely

6    clear what exactly their objective is, I don't know.

7    THE COURT:    I don't know if they're clear themselves.

8    MS. LASSITER:    And that's my problem.

9    THE COURT:    Why don't you write her a letter?  Sit

10   down with your client.  You're both good lawyers, sit down

11   with your client and write her a letter how it could be

12   resolved by amending the book.  I gather you don't want to

13   quit distributing it altogether?

14   MS. LASSITER:    No.

15   THE COURT:    It has a lot of good stuff in it.  I

16   don't know if all this detail is necessary to get across --

17   now that I've read it all, to get across the point you're

18   trying to get across is that you're under terrible stress,

19   and you called on the Lord to help you and He did.  I don't

20   know that you need to go into all this detail about people

21   to get that across.  And that's -- the whole chapter there

22   doesn't say really anything about, specifically about Mr.

23   Lassiter.  It's more about your religious views, which I

24   think are quite interesting.

25   MR. JENKINS:    We will write a letter.

34

1      THE COURT:    If you think it can be resolved that way,

2  write a letter.  It would be necessary, if you're at all

3  interested and have some counterproposals -- I don't think I

4  should get into it -- but ask for a conference with the

5  magistrate.  He gets one settled that I never believe would

6  have got settled.

7      MS. LASSITER:    I do have one question, though.  The

8  complaint also addresses defamation per quad and I'm

9  assuming that that would also be part of their case.

10      THE COURT:    I think it's become irrelevant.

11      MR. JENKINS:    The judge has ruled it's per se.

12      THE COURT:    The allegations you made are per se.

13      MS. LASSITER:    And the false light as well is gone?

14      THE COURT:    It's merged.  Unless you see something

15  involved in that that wouldn't be covered.

16      MR. JENKINS:    I was concerned about the question you

17  raised last time, your Honor, about the distinction so I did

18  some careful research.  It's extensive, I won't contend that

19  it's exhaustive, but there's a case, Supreme Court, McCall

20  versus Courier Journal.

21      THE COURT:    I'm familiar with it.

22      MR. JENKINS:    There's a footnote in that case that

23  says much has been written as to the similarity of false

24  light and defamation.  The purpose of a false light action

25  is to protect the individual and not be made to appear

35

1    before the public in an unreasonably objectionable, false

2    light, and otherwise that he is -- to sustain this action,

3    the person need not be defamed.  That's the law of Kentucky.

4    It is sufficient that the publicity attribute to him

5    characteristics, conduct or beliefs that are false and that

6    he has been placed before the public in a false position.

7    That's the law of Kentucky.

8         THE COURT:    I think what they're talking about is a

9    case, for instance, where -- I'm trying to think of an

10   example that wouldn't-- say if anybody, they're Catholic,

11   but their family is Jewish and they get all upset so that

12   put them in a false light but it's not defamatory.  The most

13   famous false light case is the one Spawn case which said --

14   Warren Spawn, he was a war hero, but he had never been in

15   the Army.  So people thought, how was he going to be made a

16   war hero if he had never been in the Army?  So that, I

17   think, is the essence.  I'm not saying every case is won,

18   they haven't used it -- kind of a substitute for libel

19   sometimes.

20        If somebody, that he has AIDS, while this is not

21   defamatory -- about having a disease, used to be libel per

22   se, not anymore.  It's certainly not their fault.  It might

23   cause people not to associate with them or to change their

24   attitude toward and say if somebody, they're

25   Republican, defamatory, as far as I know might cause them,

36

1    if they're from a Union family or something, it might cause

2    them some difficulty.

3         That's the kind of thing I'm talking about.  I don't

4    know if that fits this case.  That's the law, I don't know

5    if that fits this case.

6         MR. JENKINS:    We are comfortable with the ruling that

7    it's per se defamatory, would be received on that basis.  My

8    question is, would be appropriate before the evidence has

9    come in and the Court has had a chance to consider what

10   evidence there is, to decide as a matter of law that that

11   instruction is off the table?  I don't know, but it would

12   seem to me from the --

13        THE COURT:    All the same evidence, anyway.

14        MR. JENKINS:    It would be the same evidence.  But --

15        THE COURT:    At the end of the evidence if you want to

16   ask for an instruction that's got something to do with the

17   evidence, just don't ask for instructions for the hell of

18   it.  It has to have something to do with the evidence.

19        MR. JENKINS:    I agree.

20        THE COURT:    This doesn't seem to be a false light

21   case in the way that I understand it.  It's true libel will

22   cover it if he is, if he named what she said about him is

23   defamatory.  If it's not true --

24        MR. JENKINS:    If we believe that such a crux --

25        THE COURT:    Well, there's an offense along there

1   somewhere.  So three hours apiece for this part, and then

2   the damages you can either leave to me, maybe do it by

3   deposition, do it informally or take some evidence on it.

4        MR. JENKINS:   The only other detail I had is, we

5   don't seem to have received copies of all the documents that

6   Mrs. Lassiter has identified on her list.  Can we require a

7   mutual exchange of the exhibits?

8        THE COURT:   Absolutely.

9        MS. LASSITER:   Yes.

10       THE COURT:   Should have been attached to the pretrial

11  order.

12       MR. JENKINS:   So there's no mystery about it, not a

13  list of the exhibits, but --

14       THE COURT:   Actual exhibits.

15       MR. JENKINS:   -- actual exhibits.

16       THE COURT:   So you can make your objections in

17  advance, not huddling up at the bench.  The jury hates it, I

18  hate it.

19       MS. LASSITER:   Along those lines, I assume you want

20  them all premarked and stuff?

21       THE COURT:   Yes.

22       MS. LASSITER:   Do you have a preference as to

23  numbers, roman numerals?

24       THE COURT:   You can get together.  You can use

25  numbers and you can use letters.

38

1       MR. JENKINS:    And the only other thing I wanted to

2   add is Mr. Mezibov of our office, if there's going to be a

3   jury, would like to participate, have the possibility of

4   participating.   He's not able to be here today because of a

5   family matter.

6       THE COURT:    Glad to have him.

7       MR. JENKINS:    But if there's going to be jury, Mr.

8   Lassiter may want to involve him.   We will voice all courses

9   before.

10      THE COURT:    He's been here before.   That's great.   I

11  will try to work it out.

12      MR. JENKINS:    We will give it out best shot.

13      (Proceedings concluded.)

14

15

16

17

18

19

20

21

22

23

24

25

1                              CERTIFICATE

2

3          I, LaCartha J. Pate, a court reporter, do hereby

4   certify that the foregoing is a transcript of the pretrial

5   hearing held on April 14, 2006.

6          IN WITNESS WHEREOF, I have hereunto set my hand

7   this 27th day of April, 2006.

8

9

10                              _____

11                              LaCartha J. Pate

12

13

14

15

16

17

18

19

20

21

22

23

24

25