Eastern District of Kentucky
FILED
JUN 3 0 2006
AT COVINGTON
LESLIE G WHITMER
CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY

| | | |
|---|---|---|
| CHRISTO LASSITER, | : | Case No.: 2:04-cv-00106-WOB |
| | : | |
| Plaintiff, | : | Judge Bertelsman |
| | : | |
| v. | : | |
| | : | PLAINTIFF'S PROPOSED |
| SHARLENE LASSITER, et al., | : | FINDINGS OF FACT AND |
| | : | CONCLUSIONS OF LAW |
| Defendants. | : | |

In accord with this Court's order Plaintiff Christo Lassiter, by and through counsel, submits the following proposed findings of fact and conclusions of law.

## I. INTRODUCTION

The allegations of adultery and spousal abuse against Plaintiff Christo Lassiter, found in Defendant's book, I Have A Testimony are defamatory *per se*. The allegations are therefore assumed to be false and the burden to prove truth by a preponderance of evidence is upon Defendant Sharlene Lassiter. The "evidence" set forth by Defendant at trial falls into four categories: (1) inadmissible hearsay and rumor mongering; (2) a relitigation of the parties' divorce; (3) an irrelevant and inadmissible public records request to the University of Cincinnati; and (4) her own impeached testimony. None of Defendant's evidence, collectively, is sufficient to meet her burden. Judgment in favor of Plaintiff should be entered.

## II. PROPOSED FINDINGS OF FACT

1. Plaintiff Christo Lassiter and Defendant Sharlene Lassiter married in 1986. (Trial trans. Day 1 p. 6).

2. Both parties are employed as professors of law – Plaintiff at the University of Cincinnati College of Law (Trial trans. Day 1 p. 5); Defendant at the Salmon P. Chase College of Law at Northern Kentucky University. (Trial trans. Day 2 p. 11).

3. The parties have two children, Lindsey and Ellery. (Trial trans. Day 1. p. 157). Ten years into the marriage, Sharlene Lassiter left and the parties separated. Plaintiff filed for divorce in October 1996. (Trial trans. Day 1. p. 6).

4. After extended divorce proceedings, the Hamilton County Domestic Relations Court entered a divorce decree in April 2001. (Trial trans. Day 1 p. 6). The five years of divorce proceedings included an *ex parte* temporary restraining order against Plaintiff Christo Lassiter. (Def. Ex. C). At his *only* opportunity to contest the allegations of violence against him found in Defendant's affidavit in support of the TRO, neither Defendant Sharlene Lassiter nor her counsel appeared. (Trial trans. Day 2 p. 16). The domestic relations magistrate removed the one-sided order and prohibited either party from harassing or interfering with the other. (Plaint. Ex. S).

5. No magistrate or judicial officer ever found that Christo Lassiter committed any act of physical abuse against Defendant. (Trial trans. Day 2 p. 19).

6. The domestic relations court entered an order granting that complaint for a divorce on the ground of "irreconcilable differences." (Trial trans Day 1 pp. 6; 157). Adultery was not found to be a ground for divorce. (Trial trans. Day 1 p. 157). Initially, the court granted Defendant Sharlene Lassiter custody of the children per an agreed order. Subsequently, the court awarded Plaintiff Christo Lassiter sole custodial authority over Lindsey and Ellery. (Trial trans. Day 1 p. 157).

7. Following the divorce, Defendant Sharlene Lassiter wrote a book about her life, divorce and spiritual experience. (Trial trans. Day 1 p. 146). As part of her work on the book,

Defendant researched libel law and consulted with her attorney. (Trial trans. Day 2 p. 10). She concluded that if she did not identify Plaintiff by name in the book she could avoid liability. (Trial trans Day 2. p. 8) In 2003, Winepress Publishing, LLC, agreed to publish her book entitled I Have a Testimony.[1] Defendant testified that at least 250 copies have been sold. (Trial trans. Day 1 p. 122).

8.  Defendant acknowledged that a reader can easily identify Plaintiff. Defendant wrote the book under her married name, identified herself as a law professor at the Salmon P. Chase College of Law at Northern Kentucky University and described her husband as a law professor in Cincinnati. (Trial trans. Day 2. p. 11). I Have a Testimony describes Plaintiff as violent and adulterous, specifically:

   a. "The last time that my husband physically assaulted me, the Lord gave me a choice." (Trial trans. Day 1 p. 10; Ex. A. p. 14).

   Plaintiff testified that he never physically assaulted his wife. (Trial Trans. p. 10).

   b. "Within the first year of marriage, my husband, in a displaced fit of anger, with his father and one of his brothers, dragged me down two and a half flights of stairs." (Trial trans. Day 1 p. 10; Ex. A. p. 21).

   Plaintiff testified that this event never occurred. (Trial trans. p. 10).

   c. "My husband exploded with rage. He grabbed me and dragged me down two and half flights of steps, leaving me in a heap on the floor." (Trial trans. Day 1 p. 11; Ex. A p. 22).

   Plaintiff testified that this event never occurred. (Trial trans. p. 11).

   d. "At that moment lying on the floor of my home, I submitted to the bondage of fear and intimidation that are the hallmarks of domestic abuse." (Trial trans. Day 1 pp. 11-12 ; Exhibit A. p. 23).

   Plaintiff testified that he never abused his wife. (Trial trans. pp. 11-12).

---

[1] In his complaint, Christo Lassiter also named Winepress Publishing, LLC as a defendant. Plaintiff and Winepress have executed an agreement wherein Winepress agreed to cease publication of I Have a Testimony.

3

e. "Nine years later, my husband tried to strangle me as I held my infant son in my arms. I was again a victim of physical domestic abuse and domestic abuse." (Trial trans. Day 1 p. 12; Ex. A. p. 26).

Plaintiff testified that he never tried to strangle Defendant, nor did he subject her to any kind of physical or domestic abuse. (Trial trans. Day 1 pp. 12-13).

f. "As I held my son, my husband grabbed me by the throat." (Trial trans. Day 1. p. 13; Ex. A. p. 60).

Plaintiff testified that this statement is false. (Trial trans. Day 1 p. 13).

g. "Within a few hours of my husband's attempt to strangle me, God told me that it was time for me to go and leave my marriage." (Trial trans. Day 1, p. 13; Ex. A. p. 60).

Plaintiff testified that he did not attempt to strangle Defendant. (Trial trans. Day 1 pp. 13-14).

h. "I prayed for God to make a way for this marriage to work, even after my husband physically abused me for the second time in my marriage." (Trial trans. Day 1 p. 14; Ex. A p. 63).

Plaintiff testified that he never physically abused Defendant. (Trial trans. Day 1 p. 14).

i. "Simultaneously, I found out that my husband was having an adulterous affair with one of his students." (Trial trans. Day 1 p. 14; Ex A. p. 66).

Plaintiff testified that he never had an affair with one of his students. (Trial trans. Day 1 pp. 14-15).

j. "Was my husband committing adultery? The answer was yes and confirmation followed." (Trial trans. Day 1 p. 15; Ex A p. 66).

Plaintiff testified that any accusation of adultery was untrue. (Trial trans. Day 1 p. 15).

k. "For the next two days, I repeatedly asked God whether my husband was committing adultery, as I admitted that I might not have heard the Lord clearly. Each time, the answer was the same, 'Yes, Sharlene, he is.'" (Trial trans. Day 1 p. 15; Ex A. p. 67).

Plaintiff testified that he did not commit adultery. (Trial trans. Day 1 p. 15).

l.    "I called my secretary into my office and had her transcribe my remarks to my husband. In no uncertain terms, I let my husband know that I knew about his adultery." (Trial trans. Day 1 p. 15; Ex A p. 67).

Plaintiff testified that he did not commit adultery. (Trial trans. Day 1 p. 15).

m.    "When he entered into an adulterous relationship with one of his students, he did so primarily to aggravate and trigger every insecurity I had regarding my appearance." (Trial trans. Day 1 p. 16; Ex. A p. 97).

Plaintiff testified that he never entered into any adulterous relationship with any student. (Trial trans. Day 1 p. 16).

n.    "How deep was my sense of betrayal and loss when my husband again abused me and broke our marriage covenant with adultery?" (Trial trans. Day 1 p. 16; Ex A. pp. 108-109).

Plaintiff testified that he neither betrayed his wife nor committed adultery. (Trial trans. Day 1 p. 16).

9.    At the time of publication of I Have a Testimony, Defendant knew that Plaintiff denied committing any act of abuse or adultery. (Trial trans. Day 2 pp. 4-5; 19; Day 1 p. 152).

10.    At the time of publication of I Have a Testimony, Defendant knew that no judicial officer had ever found that Plaintiff committed adultery or committed an act of physical abuse against her. (Trial trans. Day 2 p. 19).

11.    Nowhere in the book I Have a Testimony did Defendant communicate the fact that Plaintiff had denied Defendant's allegations of adultery and abuse. (Trial trans. Day 2 pp. 12-13).

12.    Defendant never pursued claims of domestic violence in any domestic relations or criminal court. (*See e.g.* Trial trans. Day 1 p. 157).

13.    Defendant was never treated for any injury based upon her husband's alleged acts of abuse. (Trial trans. Day 1. p. 152). Despite her allegation that she was dragged down two and

5

a half flights of stairs and thrown to the landing, Defendant admitted that she had no external bruises resulting from this alleged violence. (Trial trans. Day 1. p. 153). Likewise, Defendant acknowledged that she made no report of allegations of choking or any other incident of alleged abuse to police. (Trial trans. Day 1 p. 153).

14. Defendant acknowledged that no third-party ever recorded or saw any visible injuries caused by Plaintiff's alleged acts of abuse. *Id.*

15. In regard to allegations of adultery, Professor Robert Lilly, a professor at Northern Kentucky University, testified that he told Defendant that he heard a ***rumor*** that Plaintiff was having an affair with a student. He has no personal knowledge of the veracity of this rumor. (Trial trans. Day 1 p. 85).

16. Northern Kentucky University Professor Donald Kazee testified that a student told him that she heard a ***rumor*** from an unknown and unverifiable source that Plaintiff had an affair with one of his students. (Trial trans. Day 2. pp. 27-32). Professor Kazee denied any personal knowledge of the veracity of this rumor. Professor Kazee testified that he might have shared this information with Defendant after Winepress published I Have a Testimony. (Trial trans. Day 2 p. 35).

17. Defendant testified that one of Plaintiff's students, Erinn Gordon, knew the identity of the student with whom he allegedly had an affair. Notwithstanding this testimony, Defendant failed to present testimony from Erinn Gordon despite listing her as a trial witness. (Trial trans. Day 1 pp. 149-150).

18. Defendant's testimony regarding Erinn Gordon was impeached as inconsistent with prior sworn deposition testimony. At trial, Defendant testified that she asked the name of the alleged adulteress but that Ms. Gordon did not wish to reveal it. In her sworn deposition,

however, Defendant testified that she did not think it necessary for Ms. Gordon to reveal the woman's name despite Ms. Gordon telling her she knew the name and that she would share it. (Trial trans Day 1. p. 150-151).

19. Defendant submitted as evidence public records obtained from the University of Cincinnati about Plaintiff. However, none of these records contain any allegations, accusations or findings of either domestic abuse or adultery against Plaintiff. (Trial trans. Day 1 p. 103; Trial trans Day 2. p. 15). The records submitted by Defendant involved solely Plaintiff's classroom conduct and teaching methods. (Trial trans. Day 1 pp. 74, 103, 108).

### III. CONCLUSIONS OF LAW

#### A. Evidentiary Rulings

1. The testimony of Professor Robert Lilly is hearsay offered for the truth of the allegations of adultery and inadmissible pursuant to Fed. R. Evid. 802. The Court has already so held. (Trial trans. Day 1 p. 85).

2. The testimony of Professor Donald Kazee is hearsay offered for the truth of the allegations of adultery and inadmissible pursuant to Fed. R. Evid. 802. The Court has already so held. (Trial trans. Day 2 p. 35).

3. Public records submitted by Defendant from the University of Cincinnati (Plaint. Exs. G, H, and J) relate solely to Plaintiff's classroom and professional activities, make no mention of the allegations at the center of this lawsuit and are inadmissible as irrelevant and unduly prejudicial because they do not have any tendency to make a finding of abuse or adultery more or less probable. *See* Fed. R. Evid. 401, 402, 403.

4. The testimony of Professor Robert Lilly, Professor Donald Kazee, and Defendant's exhibits G, H and J are inadmissible to show Plaintiff's reputation. At issue is

whether Plaintiff had a reputation as a person with a propensity to commit acts of violence or adultery. Classroom conduct is irrelevant to both these alleged traits excluding Defendant's Exhibits G, H and J. Fed. R. Evid. 401, 402. Further, neither Professor Lilly nor Professor Kazee offered any opinion as to Plaintiff's reputation relating to the traits of a propensity to commit acts of violence or adultery. The Court can grant no weight to this testimony.

**B.    Rulings on the Claim**

1.    To sustain a cause of action for defamation, Plaintiff must establish the following elements: 1) defamatory language; 2) about the plaintiff; 3) which is published; and 4) which causes injury to reputation. *Columbia Sussex Corp., Inc. v. Hay*, 627 S.W.2d 270, 273 (Ky. App. 1981). The Court finds Plaintiff established that the accusations of abuse and adultery contained in Defendant's book, I Have a Testimony constitutes defamatory statements about Plaintiff. The book's publication is undisputed. The Court finds that allegations of domestic violence and sexual affairs with students necessarily call into question Plaintiff's fitness to be a professor of law at the University of Cincinnati or at any other college or university. (See Trial trans. Day 1 p. 109). The Court finds that allegations of domestic violence and sexual affairs with students necessarily call into question Plaintiff's fitness to maintain custody of his children.

2.    The allegations of domestic abuse and adultery set forth in I Have a Testimony are *per se* defamatory. "In an action alleging libel *per se*, recovery is permitted without proof of special damages because injury to reputation is presumed and the words are 'actionable on their face – without proof of extrinsic facts or explicatory circumstances.' *Stringer v. Wal-Mart Stores, Inc.* Ky, 151 S.W.3d 781, 794 (2004), citing David A. Elder, Kentucky Tort Law: Defamation and the Right of Privacy, note 41, § 1.06 at 37 (1983). An accusation of adultery is defamation *per se. See e.g. Thomas v. Ragland*, 324 F.Supp.2d 950, 983 (W.D. Wis. 2004)

8

("Defendant cannot deny that an accusation of adultery can cause significant damage to a person's reputation.") *citing Muzikowski v. Paramount Pictures Corp.*, 322, F.3d 918 (7th Cir. 2003) (false accusation of adultery is defamatory *per se*). Accusations of criminal acts, i.e. spousal abuse, are defamation *per se*. *See e.g. Pennington v. Dollar Tree Stores, Inc.*, 28 Fed. Appx. 482, *citing Columbia Sussex Corp. v. Hay*, 627 S.W.2d 270, 274 (Ky. Ct. App. 1981) (falsely imputing criminal acts [spousal abuse] to another is *per se* defamatory.). Damages are presumed where statements are *per* se defamatory. *Stringer v. Wal-Mart Stores, Inc.*, 151 S.W.3d 781, 794 (Ky. 2004). It necessarily follows and the Court must presume that Plaintiff has some level of damages as a proximate result of this publication.

3.  Plaintiff Christo Lassiter is not a "public figure" and therefore need not present evidence of actual malice. The court has already so held. (*See* Doc. 33).

4.  The Court holds that the book I Have a Testimony is not protected opinion. (*See* Doc. 42). The allegations of adultery and domestic abuse found in I Have a Testimony (*see* Proposed Findings of Fact, ¶ 8, above) are not protected because they are stated as fact and require the reader to infer undisclosed defamatory information. *See e.g. Yancey v. Hamilton*, 786, S.W.2d 854, 857.

5.  The falsity of a defamatory statement is presumed. *Stringer v. Wal-Mart Stores, Inc.*, 151 S.W.3d 781, 795-96 (Ky. 2004). The burden is upon the ***defendant*** to prove the truth of the defamatory statements by a preponderance of the evidence. Defendant Sharlene Lassiter failed to set forth evidence sufficient to show that it was more likely than not that Plaintiff committed adultery or spousal abuse and has therefore failed meet her burden of proof regarding allegations of both adultery and abuse found in I Have a Testimony. Because Defendant failed

9

to meet her burden of proof regarding allegations of adultery and spousal abuse found in I Have a Testimony these statements (*see* Proposed Findings of Fact, ¶ 8 above) are held to be false.

      6.     Defendant acted with intent when she wrote I Have a Testimony. Kentucky law "treats defamation by a private, non-media defendant as a matter of strict liability and does not require that the plaintiff prove that the defendant acted with negligence, except for the element of publication which is not disputed here." (Doc. 51 – Order, *citing Stringer v. Walmart Stores, Inc.*, 151 S.W.3d 781, 793 (Ky., 2004); *Columbia Sussex Corp. v. Hay*, 627 S.W.2d 270, 273 (Ky. App. 1982); 13 *Ky. Prac. Tort Law* § 15.1 (2005).).[2] Nevertheless, at the time of publication, Sharlene Lassiter knew that Christo Lassiter denied that he was either an abuser or an adulterer (Trial trans. Day 2. pp. 4-5) and she knew that no judicial officer had ever found that Christo Lassiter committed adultery or committed an act of physical abuse against her. (Trial trans. Day 2. p. 19). Publication was intentional. *See Columbia Sussex*, 627 S.W.2d at 273). It would make little sense for the defendant to argue she negligently wrote that her husband abused her. Likewise, because the allegations are not protected opinion (Doc. 42) they necessarily require a reader to infer an undisclosed defamatory fact not in the text. *See e.g. Biber v. Duplicator Sales and Service, Inc.*, 155 S.W.3d 732 (Ky. App. 2004). Nowhere in the book does Defendant relate that Christo Lassiter had denied the allegations of adultery and abuse. (Trial trans. Day 2 pp. 12-13). It is clear that Defendant Sharlene Lassiter intentionally omitted pertinent facts related to her allegations from the text of the book.

      7.     Having determined that the complained of publication contains false, misleading or defamatory matters, the Court enjoins Defendant Sharlene Lassiter from publishing, seeking to publish or authorizing the publication of I Have a Testimony or those portions of the book

---

[2] The court reserved the issue argued by defendant that she is a "media" defendant. At trial, Sharlene Lassiter presented no evidence that she is anything other than a private defendant.

deemed defamatory (*see* Proposed Findings of Fact ¶ 8 above) in any format or medium. *See Lothscheutz v. Carpenter*, 898 F.2d 1200, 1208-09 (6th Cir. 1990)(per opinion of Wellford, Circuit Judge, concurring in part and dissenting in part, with one Judge concurring). *See also Sid Dillon Chevrolet-Oldsmobile-Pontiac, Inc., v. Sullivan*, 251 Neb 722, 732, 559 N.W.2d 740, 747 (Neb. 1997).

## IV.   CONCLUSION

For all the foregoing reasons, Plaintiff respectfully submits that judgment should be entered in his favor and the Court should rule that the accusations of *I Have a Testimony* are false and defamatory; an injunction against further publication should issue; and a finding of damages in an amount deemed appropriate by the Court should be entered.

Respectfully submitted,

/s/ Erik W. Laursen

MARC D. MEZIBOV (Ohio Bar No. 0019316)
ERIK W. LAURSEN (Ohio Bar No. 0079345)
**MEZIBOV & JENKINS, CO. LPA**
401 East Court Street, Suite 600
Cincinnati, Ohio 45202
Telephone: (513) 723-1600
Telecopier: (513) 723-1620
Trial Attorneys for Plaintiff, Christo Lassiter

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served upon Sharlene Lassiter, *pro se*, 551 Napa Valley Lane, #11, Crestview Hills, KY 41017, via facsimile and regular U.S. Mail, postage prepaid on this 30th day of June, 2006.

_____
ERIK W. LAURSEN (Ohio Bar No. 0079345)