TO BE PUBLISHED IN FEDERAL SUPPLEMENT 2D

**Eastern District of Kentucky**
**FILED**

**SEP 2 6 2006**

AT COVINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY
## COVINGTON

CIVIL ACTION NO. 04-106 (WOB)

CHRISTO LASSITER                                          PLAINTIFF

VS.                    **FINDINGS OF FACT,**
                **CONCLUSIONS OF LAW, AND ORDER**

SHARLENE LASSITER                                        DEFENDANT


BERTELSMAN, District Judge:

This is a libel action by an ex-husband against his ex-wife. The plaintiff is Christo Lassiter and the defendant is Sharlene Lassiter. Both are law professors: Mr. Lassiter at the University of Cincinnati College of Law and Ms. Lassiter at the Salmon P. Chase College of Law at Northern Kentucky University. Jurisdiction is based on diversity of citizenship.

By stipulation of the parties, the case was tried without a jury by the undersigned. Following preparation of a transcript, the parties submitted proposed findings of fact and conclusions of law and additional memoranda.

The court has carefully reviewed all the testimony and the authorities submitted as well as performing its own research, and hereby enters its findings of fact, conclusions of law, and order for an appropriate judgment.

Although there are hotly contested issues of fact, most of the background facts are agreed upon by the parties.

### Findings of Fact

The parties were married in 1986. They separated in 1996 and were divorced in 2001 in Hamilton County, Ohio. The proceedings took five years and were highly antagonistic.

In 2003, Ms. Lassiter published the book that is the subject of this action. The book is entitled *I Have a Testimony.* The book is in evidence, and the court has read it in its entirety.[1]

The book is primarily of an inspirational and religious nature. Ms. Lassiter's main theme in the book is how her faith and the power of prayer have seen her through many trying times in her life, including certain phases of her marriage and her divorce.

She alleges ongoing mental cruelty and abuse by her husband throughout the marriage. She also states in the book that he physically assaulted her on two occasions. Further, she charges in the book that her husband committed adultery during the marriage.

Although defendant did not mention plaintiff by name in the book, everybody who knew the couple knew to whom she was referring when she referred to her husband.

---

[1]The original publisher of this book, Athena Dean doing business as "Winepress Publishing," was named a defendant in this action and subsequently ceased publishing the book. This defendant has been dismissed from this case. Since Winepress's withdrawal, defendant has self-published her book with her personal computer.

Plaintiff asserts that the following passages of the book are libelous:

a.   "The last time that my husband physically assaulted me the Lord gave me a choice." (*I Have a Testimony* at 14).

b.   "Within the first year of my marriage, my husband, in a displaced fit of anger with his father and one of his brothers, dragged me down two and a half flights of stairs." (*Id.* at 21).

c.   "My husband exploded with rage.  He grabbed me and dragged me down two and a half flights of steps, leaving me in a heap on the floor." (*Id.* at 22).

d.   "At that moment, lying on the floor of my home, I submitted to the bondage of fear and intimidation that are the hallmarks of domestic abuse." (*Id.* at 23).

e.   "Nine years later, my husband tried to strangle me as I held my infant son in my arms.  I was again a victim of physical domestic abuse and domestic violence." (*Id.* at 25).

f.   "As I held my son, my husband grabbed me by the throat." (*Id.* at 59).

g.   "Within a few hours of my husband's attempt to strangle me, God told me that it was time for me to go, to leave my marriage." (*Id.* at 60).

h.   "I prayed for God to make a way for this marriage to work, even after my husband physically abused me for the second time in our marriage." (*Id.* at 63).

i.   "Simultaneously, I found out that my husband was having an adulterous affair with one of his students." (*Id.* at 66).

j.   "Was my husband committing adultery?  The answer was yes and confirmation followed." (*Id.* at 66).

k.   "For the next two days, I repeatedly asked God whether my husband was committing adultery, as I admitted that I might not have heard the Lord clearly.  Each time the answer was the same. Yes, Sharlene, he is." (*Id.* at 66-67).

l.   "I called my secretary into my office and had her transcribe my remarks to my husband.  In no uncertain terms, I let my husband know that I knew about the adultery . . . ."  (*Id.* at 67).

m.   "When he entered into an adulterous relationship with one of his students, he did so primarily to trigger and to aggravate every insecurity I had regarding my appearance."  (*Id.* at 97).

n.   "How deep was my sense of betrayal and loss when my husband again physically abused me and broke our marriage covenant with adultery."  (*Id.* at 108-109).[2]

Defendant admitted that these statements were on their face libelous *per se* but plead the truth of these allegations. Plaintiff testified that he had never physically assaulted defendant and never committed adultery while married to her.

Defendant testified in detail regarding the two assaults, giving time, place, manner, chapter and verse.  She had no direct knowledge of the alleged adultery although she described circumstantial evidence from which she had concluded that plaintiff had committed adultery.  She also proffered rumors concerning the alleged adultery which she had heard from friends.  The court excluded the rumors as hearsay.

The court finds that the defendant met her burden of proof (see discussion below) on the truth of the physical assault allegations in her book, but failed to carry her burden on the adultery allegations.  However, the court concludes the adultery

_____

[2]Excerpted from Proposed Findings of Fact and Conclusions of Law submitted by plaintiff.

4

allegations were non-actionable statements of opinion under the criteria established by the Kentucky courts.

As to the allegations of physical assault, defendant testified in detail concerning the time and circumstances under which the alleged assaults occurred. In his testimony, the plaintiff merely made a general denial that no assaults occurred. He made no effort to testify as to his whereabouts at those times or if anything had occurred which the defendant might have construed as an assault, but which in fact was not. The sincerity of the defendant was obvious to the court. It was apparent that her testimony conformed to her memory. Therefore, the court has no choice but to find as a fact that the defendant met her burden of proving the truth of the assault allegations by a preponderance of the evidence. As noted in the conclusions of law below, in Kentucky, truth is a complete defense to a defamation action.

As to the allegations of adultery, the court finds that the burden of proving truth was not met, since these charges were specifically denied in plaintiff's testimony and defendant testified that she based her view that plaintiff was committing adultery on rumor (which was inadmissible hearsay) and circumstantial evidence.

Defendant offered no direct evidence of the alleged adultery. Further, she testified that there were witnesses whose identities were known to her, or who could have easily been identified by her,

5

who could have offered direct evidence, or at least more compelling circumstantial evidence, on this issue.  Defendant chose not to pursue the matter with these witnesses, however.  This failure also raises an inference that causes the court as trier of fact to find that she did not meet her burden of proving by a preponderance of the evidence that the adultery allegations were true.  In the conclusions of law below, however, the court holds that these statements were protected opinion.

Additional facts will be stated in the course of the following discussion of the legal principles governing this case in the conclusions of law below.

### Conclusions of Law

The Supreme Court of the United States has developed a federal common law of defamation for actions by public officials and public figures and/or against media defendants.  This federal common law preempts and supercedes state defamation law.  13 David J. Leibson, Kentucky Practice (Tort Law) § 15.21 (1995); 1 Robert D. Sack, Sack on Defamation § 3.3.2.2 (3d ed. 2005).

The court has previously held that plaintiff is not a public official or a public figure and reiterates that holding.  The defendant claims to be a media defendant because she is now self-publishing her book, but she cites no authority for this conclusion.  The court holds that she is not a media defendant because of this single publication of very limited circulation.

6

Therefore, this is an action by one private person against another private person about a matter that is not of public interest.  Thus, under Kentucky law, it does "not implicate . . . constitutional protections." *Stringer v. Wal-Mart Stores, Inc.,* 151 S.W.3d 781, 793 (Ky. 2004).

To sustain a cause of action for defamation, plaintiff must establish the following elements: 1) defamatory language; 2) about the plaintiff; 3) which is published; and 4) which causes injury to reputation.  *Columbia Sussex Corp., Inc. v. Hay,* 627 S.W.2d 270, 273 (Ky. App. 1981).  The court concludes that plaintiff proved that the accusations of abuse and adultery contained in defendant's book, *I Have a Testimony,* constitute defamatory statements about plaintiff.  The book's publication is undisputed.  The court finds that allegations of domestic violence and sexual affairs with students necessarily call into question plaintiff's fitness to be a professor of law at the University of Cincinnati or at any other college or university.

The allegations of domestic abuse and adultery set forth in *I Have a Testimony* are *per se* defamatory.  In an action alleging libel *per se*, "recovery is permitted without proof of special damages because injury to reputation is presumed and the words are actionable on their face - without proof of extrinsic facts or explicatory circumstances." *Stringer v. Wal-Mart Stores, Inc.,* 151 S.W.3d 781, 794 (Ky. 2004) (citation and internal quotations

omitted).

An accusation of adultery is defamatory *per se*.  *See, e.g.,*
*Thomas v. Ragland*, 324 F. Supp.2d 950, 983 (W.D. Wis. 2004)
("Defendant cannot deny that an accusation of adultery can cause
significant damage to a person's reputation.") (citation omitted).
Accusations of criminal acts, i.e., spousal abuse, are also
defamatory *per se*.  *See, e.g., Pennington v. Dollar Tree Stores,*
*Inc.*, 28 Fed. Appx. 482, 488 (6th Cir. 2002) ( stating that falsely
imputing criminal acts to another is *per se* defamatory) (citation
omitted).  Damages are presumed where statements are *per* se
defamatory.  *Stringer*, 151 S.W.3d at 794.  It necessarily follows,
and the court must presume, that plaintiff has some damages as a
proximate result of this publication.

The falsity of a defamatory *per se* statement is presumed.  *Id.*
at 795-96.  The burden is upon the defendant to prove the truth of
the defamatory statements by a preponderance of the evidence.  *Id.*

Kentucky law "treats defamation by a private, non-media
defendant as a matter of strict liability and does not require that
the plaintiff prove that the defendant acted with negligence,
except for the element of publication which is not disputed here."
*Id.* at 793; *Columbia Sussex Corp. v. Hay*, 627 S.W.2d 270, 273 (Ky.
App. 1982).  Publication was intentional.  *See Columbia Sussex*, 627
S.W.2d at 273).

The court held during pretrial proceedings in this case that

8

none of the allegedly defamatory statements made in defendant's book were expressions of opinion. In the light of the testimony at trial and a further review of the book, however, the court now holds that the allegations concerning adultery were statements of protected opinion under Kentucky law.[3]

The Leibson treatise cited above contains an excellent discussion of the opinion doctrine. *See* 13 David J. Leibson, Kentucky Practice (Tort Law) § 15.2 (1995). The author points out that different jurisdictions follow different views on this difficult subject. *Id.*

As Leibson notes, Kentucky is one of the states that has adopted the view of Restatement of Torts 2d, § 566, which states:

> A defamatory communication may consist of a statement in the form of an opinion, but a statement of this nature is actionable *only if it implies the allegation of undisclosed defamatory facts as the basis of the opinion.*

*Id.* (emphasis added). *See also Yancey v. Hamilton,* 786 S.W.2d 854, 857 (Ky. 1989); *Biber v. Duplicatior Sales and Serv., Inc.,* 155 S.W.3d 732, 737 (Ky. App. 2004).

As summarized in Leibson:

> The [*Yancey*] court, following comments to the *Restatement,* distinguished between "pure" opinion which is absolutely protected and "mixed" expressions of opinion which are not. It said:
>
>> Pure opinion . . . occurs where the commentator states the facts on which the opinion is based, or where both

---

[3]This conclusion is not based on federal constitutional law, but rather on the principles of defamation law.

9

> parties to the communication know or assume the exclusive facts on which the comment is based . . . . In contrast, the mixed type is apparently based on facts regarding the plaintiff or his conduct that have not been stated by the defendant or assumed to exist by the parties to the communication.
>
> *Thus, what the trial court must decide in "opinion cases" is whether a reasonable person reading the statement in the context of the whole article would believe it is based upon alleged facts, which, if untrue, would be defamatory.* In *Yancey*, the Supreme Court concluded that "in the whole context of its publication, Hamilton's comments created a reasonable inference that they were justified by undisclosed defamatory facts.*

Leibson, *supra*, at 449 (quoting *Yancey v. Hamilton*, 786 S.W.2d 854, 857 (Ky. 1989)) (internal quotations omitted) (emphasis added). This is the opinion doctrine as set forth in Restatement of Torts 2d, § 566. It is not universally followed.

In the case at bar, the evidence at trial, in which the book was scrutinized in detail, showed that defendant arrived at the conclusion that the plaintiff had committed adultery on the basis of rumor and circumstantial evidence which was persuasive to her. *The facts on which she based the conclusion were disclosed in the book.*

Therefore, the adultery allegations fit the definition of "pure opinion" under the Restatement view as adopted by the Supreme Court of Kentucky in *Yancey*. It makes no difference that some of the matters forming the basis of defendant's opinion were hearsay and thus not admissible in the trial. The book discloses the facts on which the opinion was based. The conclusion was denied by the

plaintiff, but the existence of the rumors and the facts comprising the circumstantial evidence were not. *Cf. Biber, supra.* The reader is in as good a position as the author to judge whether the conclusion she reached -- that adultery had been committed -- was correct.

Therefore, the plaintiff's causes of action for defamation fail, and judgment must be entered for the defendant.

### *Injunctive Relief*

Inasmuch as the court has held that defendant is entitled to judgment, it is unnecessary for the court to address the highly complex issue of damages. However, to facilitate appellate review the court will discuss the issue of injunctive relief, since plaintiff has stated that this is the principal type of relief he seeks.

As it happens, the undersigned in the long distant past wrote an article on the subject of injunctive relief prohibiting expression in libel and other cases. William O. Bertelsman, *Injunctions Against Speech and Writing: A Re-evaluation,* 59 Ky. L. J. 319 (1971). At that time, it was stated: "[E]quity has traditionally refused to grant an injunction against speech or writing, no matter how clear the proof of falsehood, and no matter how inadequate an award of pecuniary damages is to repair the harm done to the victim." *Id.* at 321. The reason for this rule was that any such injunction would be a prohibited prior restraint.

11

*See Tory v. Cochrane,* 544 U.S. 734, 737-38 (2005)(still expressing reservations about injunctions against defamation at least for libel of public figures); *Metropolitan Opera Ass'n, Inc. v. Local 100, Hotel Employees and Restaurant Employees Int'l Union,* 239 F.3d 172, 176 (2d Cir. 2001).

The article suggested that this traditional view, which was firmly entrenched at the time, should be re-evaluated and that injunctions could be constitutionally granted in defamation and privacy cases under the following standards:

1. To obtain such an injunction the plaintiff should be required to show irreparable injury if the injunction is not granted, not in a merely formal sense, as is true in some contexts in equity, but in a strict sense such as the destruction of his character, good name, or his ability to pursue his livelihood or to live his life in peace and quiet, or the infliction of severe emotional distress;

2. Where falsity is an issue, the plaintiff must prove by clear and convincing evidence that the expression sought to be restrained is false;

3. The injunction must be narrowly drawn and the matter to be enjoined particularly described so that publication of only the objectionable matter will be inhibited;

4. No injunction should be granted where the defamation amounts to libel of a government official or a candidate for public office, or the subject matter is so imbued with the public interest that it outweighs the social policy in the protection of reputation and privacy.[4]

In the intervening years, although certainly not because of the article, the law has developed pretty much along the lines the

---

[4]The article implies that the injunction would only be issued after a judicial determination of falsity.

12

article suggested with one exception.

The breakthrough was the decision of the United States Supreme Court in *Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Relations*, 413 U.S. 376 (1973), in which the Court approved enjoining the publication of want ads which violated the civil rights laws by advertising separately for male and female job applicants. The Court observed that it had "never held that all injunctions [against expression] are impermissible." *Id.* at 390 (citation omitted). The Court further noted that the injunction before it was narrowly drawn, the expression enjoined was clearly illegal, that this illegality had been judicially determined before the injunction issued, and that it did not prohibit political expression. *Id.* at 390-91.

Several state and lower federal courts have had occasion to address the subject over the years. A sampling appears in the margin.[5] Excellent discussions of the modern state of the law may

---

[5]*Metropolitan Opera Ass'n, Inc. v. Local 100, Hotel Employees and Rest. Employees Int'l Union*, 239 F.3d 172 (2d Cir. 2001)(preliminary injunction against picketing and statements made in labor dispute reversed; states equity will enjoin a libel only in extraordinary circumstances; no final adjudication of falsity; injunction vague); *San Antonio Cmty. Hosp. v. Southern Calif. Dist. Council of Carpenters*, 125 F.3d 1230 (9th Cir. 1997)(admitted falsity); Kramer v. Thompson, 947 F.2d 666 (3d Cir. 1991)(injunction reversed; Pennsylvania law; extensive review of modern and historical authorities); *Lothschuetz v. Carpenter*, 898 F.2d 1200 (6th Cir. 1990)(injunction permitted if prior adjudication of falsity; District of Columbia law); *Karhani v. Meijer*, 270 F. Supp.2d 926 (D. Mich. 2003)(temporary restraining order enjoining libel and ethnic intimidation would be unconstitutional prior restraint); *Aguilar v. Avis Rent A Car*

also be found in David A. Elder, *Defamation: A Lawyer's Guide* §9.9 (2003) and 1 Robert D. Sack, Sack on Defamation § 10.6.1 (3d ed. 2005).

As the law has developed since 1971, the cases permitting injunctions have not expressly required proof of falsity by clear and convincing evidence as my article had suggested. However, the cases approving such injunctions have emphasized that there must be a prior adjudication of falsity as a condition precedent to the issuance of an injunction. The other factors of a narrowly-drawn injunction and proof of irreparable injury are expressly required or assumed to be present.

*Lothschuetz v. Carpenter*, 898 F.2d 1200 (6th Cir. 1990), is, of course a binding holding on this court that injunctive relief against libel is allowable under the First Amendment if there is a prior adjudication of falsity. A close look at the facts of that case reveals that the falsity was established with more than clear and convincing evidence. The statement alleging that the suing attorneys were guilty of an unethical conflict of interest had been established as libelous by reason of a default judgment. *Id.* at

Sys., Inc., 980 P.2d 846 (Cal. 1999)(narrowly drawn injunction prohibiting ethnic intimidation upheld); *Sid Dillon Chevrolet-Oldsmobile-Pontiac, Inc. v. Sullivan*, 559 N.W.2d 740 (Neb. 1997)(injunction denied; no prior adjudication of falsity); *O'Brien v. Univ. Cmty. Tenants Union, Inc.*, 327 N.E.2d 753 (Ohio 1975) (injunction proper if prior judicial determination of falsity) *Nolan v. Campbell*, 690 N.W.2d 638 (Neb. App. 2004) (narrowly drawn injunction proper where prior adjudication of falsity).

1204. Therefore, the court did not discuss the factor of degree of proof, and did not reject the view that proof of falsity or illegality by clear and convincing evidence should be required.

But for injunctive relief to be allowable in a diversity case, it must pass muster not only under federal, but also state law. Thus, in the instant case, an additional factor must be considered. That is, the effect of the provision of the Kentucky Constitution directly condemning prior restraints:

> Printing presses shall be free to every person who undertakes to examine the proceedings of the General Assembly or any branch of government, and no law shall ever be made to restrain the right thereof. *Every person may freely and fully speak, write and print on any subject, being responsible for the abuse of that liberty.*

Ky. Const. § 8 (emphasis added).

This provision would appear to be intended to adopt the classic law against prior restraints, discussed in my article. Although the parties have not cited, nor has the court found, any Kentucky cases addressing the effect of this provision, a similar constitutional provision was held by the Third Circuit to preclude injunctive relief, even under the modern approach. *Kramer v. Thompson,* 847 F.2d 666, 670-80 (3d Cir. 1991)(Pennsylvania law)(extensively reviewing historical and modern authorities and noting that the provision is derived from Blackstone's definition of a prior restraint).

This court's best assessment of the Kentucky courts' likely resolution of the propriety of injunctive relief against defamation

or invasion of privacy is that, if they permitted an injunction at all, they would at least require that the court be persuaded by clear and convincing evidence that the expressive matter to be enjoined is false or illegal.

If they allowed such injunctive relief, they would require at least:

1. That the injunction be clearly and narrowly drawn so as not to prohibit protected expression;

2. That there be an adjudication of falsity or illegality prior to the issuance of the injunction;

3. That the falsity or illegality be established by at least clear and convincing evidence;

4. That the enjoined expression not be political in nature, or otherwise protected by the First Amendment, or on a subject so imbued with the public interest that its publication outweighs the social policy in the protection of reputation and privacy; and

5. That the usual equitable requirements for an injunction be met.

In the view of the court, no injunction should be granted against defamation -- whether under state or federal constitutional law or the principles of equity -- unless there is proof of falsity

16

by at least clear and convincing evidence.[6]  This requirement is necessary to preserve the right of free expression.

The present case is a good example of the need for this additional safeguard.  In the instant case, the issuance of an injunction would not in the opinion of this court be proper, even if it should ultimately be determined that the plaintiff is entitled to some relief, because this degree of proof is lacking. Even if a higher court determines that the adultery allegations are not protected opinion, their falsity has not been proved by clear and convincing evidence.  The defendant merely failed to meet her burden of proving truth by a preponderance of the evidence.  When balanced against the circumstantial evidence offered by the defendant, the plaintiff's proof did not meet the standard for clear and convincing evidence.

Therefore, even if it is ultimately determined that some of the defendant's allegations in the book form the basis of viable defamation claims, the court would not grant injunctive relief.


A separate judgment shall enter concurrently herewith.

---

[6]Illegality, such as a violation of trademark law or civil rights law, will usually be self-evident.

This 26th day of September, 2006.

William O. Bertelsman

**WILLIAM O. BERTELSMAN, JUDGE**

18